```
            UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,       :
            Plaintiff,          :    Case No. 3:05-CR-54(JBA)
                                :
     v.                         :    May 20, 2019
                                :
QUINCY HINES,                   :
            Defendant.          :
```

## MOTION TO TERMINATE SUPERVISED RELEASE
## PURSUANT TO 18 U.S.C. §3583(e)(1)

**The Defendant** QUINCY HINES, motioning this Court *in propria persona* (*pro se*) to terminate the imposed term of supervised release, reducing such to a "time already served" duration. This request is made pursuant to title 18 United States Code §3583(e) and Federal Rules of Criminal Procedure 32.1(c). Under the same rule of criminal procedure, no hearing is requested in this matter.

### I. Procedural History

This case was the culmination of years of drug abuse and prior arrests for possession, sale, and distribution of narcotics. I wash charged with, and pleaded guilty to:

1. Conspiracy to Possess with Intent to Distribute 50g or more of Crack Cocaine (Count 1); and

2. Conspiracy to Possess with Intent to Distribute 100g or more of Phencyclidine (Count 2);

Both of these counts were violations of 21 U.S.C. §846 and §841(a)(1), with sanctions statutes in §841(b)(1)(A) for Count 1, and §841(b)(1)(B) for Count 2. Docket Entry 701.

I was sentenced to 144 months on each count to be served concurrently. I was also sentenced to serve 10 years of supervised release on both counts, also to be served concurrently.

I was released from custody of the BOP to the jurisdiction of the United States Probation Office here in the New York City in the Southern District of New York October 23, 2014.

I have now completed 55 months of supervision without violation or flaw. I make this request after learning that it is my right to file a request for early termination and that I have been in compliance ever since release.

## II. Jurisdiction

Although I am supervised in and by the Southern District of New York, this Court had and maintains jurisdiction of this case from pretrial, and now during my supervision phase.

## III. Authority

The authority this Court has to terminate an active term of supervised release comes from statute:
> "Modification of Conditions or Revocation.—The court may, after considering the factors set forth

> in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;"
> 18 U.S.C. §3583(e)(1)

The applicable rule of criminal procedure, as required above, is Fed. R. Crim. P. 32.1(c)(1) & (2).

> "(1) *In General.* Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.
>
> (2) *Exceptions.* A hearing is not required if:
>    (A) the person waives the hearing; or
>    (B) the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and
>    (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so."

Committee notes to this procedural rule don't spend much time on termination requests, but bring up a defendant's right to present mitigating information when a modification request would be of greater restriction to the defendant. In this case, I both waive the hearing, and request that a decision in this matter be made without such a hearing once the government is given an opportunity to proffer a written objection if it

chooses to do so.

### IV.   Controlling Precedent

"Early discharge or another form of modification is appropriate to 'account for new or unforeseen circumstances' not contemplated at the initial imposition of supervised release." *United States v. Rasco,* No. 88CR817 (CSH), 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000) (quoting *United States v. Lussier,* 104 F.3d 32 (2nd Cir. 1997). Although the oft-used "exceptional conduct" and "changed circumstances" standard set by the *Lussier* Court, *id,* has now been nullified by U.S.S.G §5D1.2, the authority *Lussier* proscribes judges to allow for early termination has not. See ¶7 for further discussion.

"The Supreme Court has described supervised release as "the decompression stage" between prison and full release." *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015) (Quoting *Johnson v. United States,* 529 U.S. 694, 709 (2000)). As will be seen below, this decompression stage, and the further need for supervision, no longer applies in my case.

### V.   Policy

§5D1.2.  The policy here made a sharp change in 2011 when the amendments to the manual that year specifically changed this section to encourage early termination in appropriate cases.

Prior to this change, the Guidelines Manual never actively encourage courts to terminate defendant's supervision terms.

> "The guidelines encourage . . . [courts] to exercise this authority in appropriate cases, particularly noting that a court may impose a longer term of supervised release on a defendant with a drug, alcohol or other addiction, but may then terminate the supervised release term early when a defendant successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."[1] U.S.S.G. §5D1.2 cmt. n. 5 (Internal quotations omitted).

I will go into further detail below, but I believe this section is referencing the intensive RDAP program offered by the BOP. Naming this program specifically would be inefficient, as the BOP could change the name of the program at anytime, yet the core of what that program offers could remain.

Probationary policy in regards to recommending early termination in supervised release cases comes from Monograph 109[2]. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation officers that they **"should consider the suitability of early termination for offenders as soon as they are statutorily eligible."**

When making this determination, the 9 general criteria for making a recommendation to the court for early termination are found in section §380.10(b):

---

1 From "Primer: Supervised Release" (Office of General Counsel, United States Sentencing Commission; 2015). Available at: https://www.ussc.gov/sites/default/files/pdf/training/primers/2015_Primer_Supervised_Release.pdf
2 Guide to Judiciary Policy, Volume 8, Part E: Supervision of Federal Offenders (Monograph 109)

> *(1) Stable community reintegration;*
> *(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;*
> *(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;*
> *(4) No history of violence;*
> *(5) No recent arrests or convictions;*
> *(6) No recent evidence of alcohol or drug abuse;*
> *(7) No recent psychiatric episodes;*
> *(8) No identifiable risk to the safety of any identifiable victim; and,*
> *(9) No identifiable risk to public safety based on the Risk Prediction Index."*

## VI.   Argument

Of all the sentencing factors from §3553(a) that are considered at original judgment, one is conspicuously missing from the list in §3583(e)(1): "the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[3] That means that supervised release is not part of the punishment phase of a judgment, but serves other intentions of sentencing. This is evinced by the clarity given by the sentencing commission in §5D1.2, citing rehabilitation completion as a valid reason for terminating a term of supervision early.

The Supreme Court clarified this in *Johnson V. United States,* 529 U.S. 694, 709 (2000), when supervised release was described as the "decompression stage" of a judgment. See also

---

3   18 U.S.C. §3553(a)(2)(A)

*United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015).

If, then, the transition or decompression from incarceration, and there are no other goals of supervision (or special conditions of supervision) left to achieve, then the purpose of supervision has been exhausted and early termination is warranted. The interests of justice are served, by statutory definition and precedent, by early release in these situation.

Regarding §3553(a)(2)(B) & (C), I am of low risk to re-offend. My criminal history score may not indicate this, but my life since incarceration is a testament to a changed man.

I had an extensive conviction history when I was indicted in this case, as I spent many years in the grips of addiction. I do not ignore that part of my past, nor do I try to hide from it. This case made me realize how much I needed to change my life. In prison, I participated in the rigorous 500-hour RDAP program. It is an intense platform designed to use many different tools to help addiction and recover. Not only did I successfully complete this course but I did exceptional well as to where after my completion of the program the BOP treatment staff offered me a position as a Senior Peer Assistant within the program itself while I finished out the remainder of my sentence. In this position, I served as a facilitator and mentor/role model to other participants/inmates that entered the

program. This is where I developed skills that would open up the doors to the career field I am in today, social services. I was grateful for this opportunity and still utilize the tools today in my everyday life, skills such as building healthy relationships, assertive communication, and rational thinking skills. I completed the RDAP program and the 6-months of aftercare associated with halfway house custody for RDAP participants, and have been clean and sober since my sentencing.

Now that I have made a positive transition in life, I have dedicated my time and my career to helping others who may be facing poverty, homelessness, and addictions as I once have. It would be a waste for my own journey out of that life to not demonstrate it to others. Therefore, I am appreciative of the opportunity to be in a position to give back to the community today in life.

From the day, I was released into the community my mission has been to be an influential role model and provide guidance to at-risk youth based on my own personal life's experiences. I am in hopes of inspiring others to better themselves and make positive changes in their lives as I have. Upon my release in 2014, I began volunteering my free time serving as a mentor/role- model for children and youth from Urban Communities

throughout New York City at a non-profit program called Project Hype in Cambria, Queens.

Through motivational speaking I was encouraging them build a positive self-image to boost self-confidence and help develop mechanisms for coping with peer and social pressure. Through sharing my own life's experiences, I was working to teach them the importance of accountability and understand the cause and effects of their behaviors and actions. At this time, I also started my career at Praxis Housing Initiatives, where I worked as a case manager and life skills counselor to prepare chronically homeless persons living with HIV/AIDS, mental health issues, chemical dependencies, and other special needs for permanent housing placement.

After the worked I did at Praxis I then moved on in my career to Fortune Society where I worked as a counselor and education counselor at their Alternative to Incarceration Program. As an alternative to incarceration counselor I provided therapeutic counseling to help clients build character, self-esteem, and self-awareness. I facilitated workshops on various topics such as anger and stress management to strengthen client's ability to make appropriate life decisions, improve their daily living skills, and develop harm reduction strategies to overcome dependencies and maintain sobriety. I was also

responsible for writing reports to the courts criminal justice system to outlining the client's progress in the program. When promoted to ATI's education counselor, on a daily basis I helped participants overcome barriers to education and guided them to becoming successful students on the journey to obtaining their GED. My time working at Fortune Society's Alternative to Incarceration Program not only was I a counselor to at-risk youth, and worked towards helping participants further their education, but my work there was also helping reduce the cycle of recidivism.

    I am now a Case Manager for Westhab, a supportive housing program in Yonkers, New York. There I manage a case load of 20 people, both singles and families who are all formerly chronically homeless. All of my clients have been diagnosed with mental health and substance abuse issues. In my current position, I get them out of the shelter system and locate them permanent housing within the community. I provide supportive counseling and work closely with them teaching them life skills, refer them to drug treatment centers to address their addictions, and make sure they are maintaining their mental health treatment and are taking their mental health medications as prescribed. My daily life is dedicated to helping them overcome their addictions, maintaining their housing stability,

and supporting their mental health. There is no other place or way I could imagine using my time, skills, and experience, then doing what I do for Westhab.

To further my career, I have also been enrolled in college at The College of New Rochelle over the past 2 years actively working on obtaining my Bachelor's degree. My area of focus is Psychology where I am carrying a 3.800 cumulative grade point average to date.

§3553(a)(6) seeks to make the decisions in sentencing (in this case, a sentence reduction) more uniform by seeking to treat similar defendants with similar criminal conduct in like-ways. So it is helpful to look at other, similar defendants, who have been looked at for early termination with drug conspiracies.

In *United States v. Gossett,* No. 2:06-CR-0172-4 (VAED, 2017 release), defendant Gossett was terminated after serving two of his 5 year term of supervision for his conviction of 21 U.S.C. §846 charges. See also *United States v. Henry*, No. 2:13-CR-10431 (MIED, 2017 release) where defendant Henry was convicted on one count of Conspiracy to Distribute "Crack" Cocaine, was sentenced to 5 years of supervision, and was discharged after serving 4 years of supervision. And for a case even closer to my home, see *United States v. Pollard,* (NYED No. 2:05-CR-16).

My support structure here is second to none. This system is strong and necessary for me to be able to accomplish all I've been able to do since my release from prison. I have a girlfriend who loves, and supports me by all means. We live together, are engaged to be married, and are presently working on starting a family together. She has been my biggest support system since my release from prison. My decisions and conduct since my release has allowed me to rebuild and now have an amazing relationship with my two daughters (20 and 22 years old, respectively), and my two grandsons today in life.

My parents are both deceased now; my mother passed away in 2000, and my father passed away shortly after in 2002. However, my girlfriend's mother and my aunt have become like surrogate mothers since the passing of my own, their support and contributions to my life cannot be overstated. My family is my biggest support team today in life and they are proud of my accomplishments since I have been home from prison.

## CONCLUSION

Based upon the reasons and factors discussed in this motion, I respectfully request that this Court terminate the remainder of my term of supervised release.

Respectfully submitted on ___JUNE 3RD___, 2019.
[date]

/s/ _____
QUINCY HINES
*Pro Se* Defendant, Movant

## COMPLIANCE STATEMENT

This document complies with Local Civil Rule 7(a) & 10, and what precedes is a concise memorandum of case history, points of authority, policy and argument to justify the request sought herein. It is written in double-space, 12-point Courrier font and is less than 40 pages long.

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, QUINCY HINES, do hereby certify that I have served a true and correct copy of the following document,

**MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE TERM**

upon the court and the office of the United States Attorney:

**Sandra Slack Glover**  
U.S. Attorney's Office-NH  
157 Church St., 23rd floor  
New Haven, CT 06510

**Clerk of the U.S. District Court**  
District of Connecticut – New Haven  
Richard C. Lee U.S. Courthouse  
141 Church Street  
New Haven, CT 06510

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the 3RD day of JUNE, 2019.

_____  
QUINCY HINES  
*Pro Se* Movant